IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHERYL CONSTANT, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 07-AR-0072-S |
| } | |
| INTERNATIONAL HOUSE OF } | |
| PANCAKES, INC., } | |
| } | |
| Defendant. } | |

### MEMORANDUM OPINION

If this court turns out to be right when, by separate order, it grants the motion to remand filed by plaintiff, Cheryl Constant ("Constant"), the court will have come close to proving that the day of the knee-jerk removal of diversity tort cases from state to federal court within the three states comprising the Eleventh Circuit came to an end on April 11, 2007, when *Lowery v. Alabama Power Company*, ____ F.3d ____, 2007 WL 1062769 (11th Cir., Apr. 11, 2007), was decided. "Circumspection" and "compunction" will be the future watchwords for diversity removing defendants in the Eleventh Circuit, except in the few cases which begin with a state court complaint with an *ad damnum* clause praying for more than $75,000.

Constant filed her complaint against International House of Pancakes, Inc. ("IHOP") in the Circuit Court of Jefferson County, Alabama, claiming that she sustained severe injuries in a fall caused by IHOP's negligence. Constant's complaint contains no *ad damnum* clause. There is no requirement that it do so. The absence

of an *ad damnum* is routine in Alabama, especially in cases where complete diversity of citizenship invites removal to federal court under 28 U.S.C. §§1441 and 1332(a). In her complaint, Constant simply "demands judgment of the Defendants [sic] in such character and quantity as allowed by law", and "claims compensatory and punitive damages in such amounts as are appropriate to this case". Alabama not only allows a plaintiff to avoid any mention of the amount of damages she seeks, but a plaintiff who inadvertently or deliberately includes an *ad damnum* can recover more than that amount. If a plaintiff demands precisely $75,000, the jury is permitted to award $1,000,000 if the evidence justifies it. *See Fuller v. Preferred Risk Life Ins. Co.*, 577 So.2d 878 (Ala. 1991).

Prior to April 11, 2007, Alabama personal injury cases and wrongful death cases with no *ad damnum*, but in which diversity of citizenship existed, were regularly removed to federal court upon defendant's filing of a notice of removal that simply asserted the existence of the more than $75,000 in controversy required by 28 U.S.C. §1332(a), and proved that amount by citing jury awards in excess of $75,000 in similar Alabama tort cases. District courts, including this court, have, without hesitation, allowed such removals unless the plaintiff resolved the ambiguity that she herself deliberately created by conceding that she will forever forego any claim above $75,000, in which event her case, pre-*Lowery*, was remanded.

In its notice of removal, IHOP alleges, *inter alia*: "The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, notwithstanding the fact that Plaintiff's Complaint does not set forth a **specific** amount of damages claimed". (emphasis in original). The notice then provides several eye-popping examples of jury verdicts in Alabama in amounts far exceeding $75,000 in slip-and-fall cases. IHOP then makes the following argument in support of diversity jurisdiction:

> It is well settled that an indeterminate complaint "does not show that the case is not removable; it simply does not comment on federal jurisdiction" *Robinson v. Quality Ins. Co.*, 633 F.Supp. 572, 574 (S.D. Ala. 1986). In such cases, the court has the "duty to independently determine the propriety of jurisdiction". *Id.* at 575. With that said, it is clear that, if the allegations of the Complaint in the case at hand are well-founded, the amount in controversy requirement of $75,000 would be satisfied.

IHOP's notice of removal contains not only what have previously been the typical allegations in similar removals, but IHOP gilds the lily by attaching to its notice of removal a letter it received from Constant's lawyer approximately two months before the suit was filed. In that letter, the lawyer describes Constant's prospective case as one in which liability is clear, in which Constant's medical expenses to date reach a total of $16,988.78, in which Constant is described as having "experienced excruciating, continuous pain", and in which the lawyer concludes with these words:

3

> On the basis of clear liability, lack of contributory negligence, medical bills, future medical care, and pain and suffering, we hereby request a settlement in the amount of Seventy Five Thousand Dollars ($75,000). A reasonable jury, in our opinion, would have little difficulty in awarding that amount and possibly more.

On April 11, 2007, in *Lowery*, the Eleventh Circuit affirmed this court's order remanding a case that had been removed to it from a state court under the Class Action Fairness Act of 2005 ("CAFA"). Although the jurisdictional amount there being looked at was the $5,000,000 required for the removal of a "mass action" under CAFA and not the $75,000 required by §§1441 and 1332(a), the principles of law and the legal analysis are the same in both cases. The Eleventh Circuit reached the following conclusions in *Lowery*, all applicable to the case here under consideration:

> We have held that, in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996) (adopting the "preponderance of the evidence" standard after examining the various burdens of proof in different factual contexts), *overruled on other grounds, Cohan v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) . . .
>
> * * *
>
> We are bound to adhere to circuit precedent. Defendants must establish the jurisdictional amount by a preponderance of the evidence. We note, however, that in situations like the present one - where damages are unspecified and only the bare pleadings are available - we are at a loss as to how to apply the preponderance burden meaningfully. We have no evidence before us by which to make an informed assessment of the amount in controversy. All we have are the representations relating to jurisdiction in the notice of removal and the allegations of the plaintiffs' third amended complaint.

As such, any attempt to engage in a preponderance of the evidence assessment at this juncture would necessarily amount to unabashed guesswork, and such speculation is frowned upon. *See Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978) (noting, in a removed class action, that "it was not open for defendants to attempt to show" the requisite amount in controversy per capita where the complaint made insufficient allegations, "[n]or was it open to the district court to speculate" on whether the jurisdictional facts existed).

* * *

[W]e conclude that the removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447(c) requires that a court review the propriety of the removal on the basis of the removing documents.  If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate.

* * *

[U]nder § 1446(b), in assessing the propriety of removal, the court considers the documents received by the defendant from the plaintiff - be it the initial complaint or a later received paper - and determines whether that document and the notice of removal unambiguously establish federal jurisdiction.  This inquiry is at the heart of a case, such as the one before us, in which the plaintiffs challenge removal by filing a timely motion to remand under § 1447(c).

* * *

[T]here are some exceptions to the rule that the court is limited to considering the removing documents.  A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff.  In such situations, the underlying substantive law provides a rule that allows the court to determine the amount of damages.  For example, in contract law, the default measure of damages is expectation damages; a court may look to the contract and determine what those damages would be.  By contrast,

5

"[w]here the law gives no rule, the demand of the plaintiff must furnish one." *McNutt*, 298 U.S. at 182, 56 S. Ct. at 782. When a plaintiff seeks unliquidated damages and does not make a specific demand, therefore, the factual information establishing the jurisdictional amount must come from the plaintiff.

* * *

The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

* * *

Allowing such speculation in the notice of removal with regard to the existence of jurisdiction would inevitably erode the "reasonable inquiry" standard of Rule 11 generally. If the court asserts jurisdiction on the basis of the defendant's speculative assertions, it implicitly accepts rank speculation as reasonable inquiry. This could undermine the requirement of reasonable inquiry not only in removal situations, but also in other contexts.

* * *

Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally.

* * *

Because jurisdiction was challenged within thirty days of removal, and remand was promptly granted, we are limited in our review to determining whether the pleadings or "other paper" included with the notice of removal provide an unambiguous statement that clearly establishes federal jurisdiction over this action.

* * *

>   The additional "evidence" contained in the supplement [to the notice of removal] likewise fails to support the defendants' contention that the district court had jurisdiction over this action. First, we note that this evidence regarding the value of other tort claims was not received from the plaintiffs, but rather was gathered from outside sources. As such, the evidence is not of the sort contemplated by § 1446(b). Even if the defendants had received the evidence of other suits from the plaintiffs, we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit. Looking only to this evidence and the complaint, the facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute - with a record bereft of detail - we cannot possibly ascertain how similar the current action is to those the defendants cite. Absent specific detail about the present action, the supplement in no way clarifies the aggregate value of the claims here. The defendants, therefore, have failed to meet their burden.

IHOP's only possible means of escaping the firm embrace of *Lowery* is Constant's demand letter. Does the demand do what the enigmatic complaint does not do, namely, provide a logical basis for concluding that the value of Constant's claim exceeds $75,000? The letter asked for $75,000 in settlement, while saying, just as the law of Alabama allows, that a jury possibly could give more. Constant's lawyer was as careful not to demand more than $75,000 in the letter as he was two months later to leave out an *ad damnum* clause in the complaint. The question to be answered as this court applies *Lowery* to the present scenario is: Can the court clearly deduce from the letter that Constant's claim exceeds $75,000 in value, or is IHOP engaged in wishful thinking of the kind flatly

rejected by the Eleventh Circuit in *Lowery*? At first blush, it would seem reasonable to believe that someone who demands $75,000 in settlement is offering to compromise, meaning that any compromise would be between something lesser and something larger than the settlement offer. This "logic" fails, and becomes mere conjecture as to value, when this court subscribes, as it does, to the reasoning of the Eastern District of Missouri on precisely the same subject. Judge Shaw there persuasively responded to IHOP's "logic" in *Corlew v. Denny's Restaurant, Inc.*, by saying:

> The Court recognizes that defendant, with some justification, is frustrated by plaintiff's careful limitation of her claim to the jurisdictional limit, as amended and as it previously existed. Defendant's removal is based solely on plaintiff's settlement demand of $75,000.00. This is insufficient to establish the jurisdictional amount for two reasons. First, the mere existence of a settlement demand is not dispositive of the issue of the jurisdictional amount. *See e.g., King v. Wal-mart Stores, Inc.*, 940 F.Supp. 213, 217 n. 1 (S.D. Ind. 1996); *Saunders v. Rider*, 805 F.Supp. 17, 18-19 (E.D. La. 1992).
>
> Second, for diversity jurisdiction to attach, the amount in controversy must **exceed** the value of $75,000.00. 28 U.S.C. § 1332(a); *see Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994) (holding under former jurisdictional limit that diversity jurisdiction did not exist where plaintiff sought damages of exactly $50,000.00). Assuming *arguendo* that plaintiff's case is worth $75,000.00, the jurisdictional requirement is not met because the sum does not exceed $75,000.00. Further, because the Court must strictly construe the amount in controversy requirement of diversity jurisdiction, it is not free to disbelieve plaintiff's valuation of her case, even under the circumstances presented.

983 F.Supp. 878, 879-80 (E.D. Mo. 1997) (emphasis in original).

This court is persuaded by *Corlew* as an addendum to the comprehensive and powerful language above quoted from *Lowery*.

Even if this court should overlook the pointed words in *Lowery* that expressly limit the jurisdictional examination to what appears in the state-court complaint and in any other materials **furnished by plaintiff after that complaint was filed**, and should consider Constant's **pre-filing** letter as evidence, Constant has, even in her demand letter, conscientiously stayed under the jurisdictional amount. Who is to say that Constant's lawyer was not giving his honest assessment of the value of his client's case? This court is unwilling possibly to misjudge Constant's intent, especially under the constraints of *Lowery* and the overarching principle of limited federal jurisdiction. The court is not a mind reader. As explained in *Lowery*, it cannot indulge in speculation. It is, of course, not always easy to draw the line between deduction and speculation. Juries are routinely instructed that they are obligated to make this distinction. Deduction is allowed, even encouraged. Speculation is unreliable, even dangerous. Constant's demand letter was like any unsuccessful sales pitch. It did not obtain the result it sought, namely, IHOP's acceptance of the $75,000 offer, by which IHOP would have agreed with Constant that her claim is worth $75,000, which is less than the jurisdictional amount. If the court were going to speculate, it could just as easily speculate that IHOP believes Constant's claim to be worth

**less** than $75,000 as to speculate that Constant believes it to be worth **more** than $75,000. The court is left with speculation as the only means by which it could conclude that the amount in controversy exceeds $75,000 in value.

### Conclusion

Applying *Lowery* to the procedural facts presented by IHOP, the case must be remanded. IHOP has simply not met its burden of proving by a preponderance of the "evidence" that the value of this claim exceeds $75,000, exclusive of interest and costs.

Because *Lowery* had not been decided when IHOP filed its notice of removal, and did only what everybody else was doing at the time, this court will deny the request that accompanied Constant's notice of removal for "attorney's fees and costs incurred as a result of the improper removal of the case". Because defendants are now aware of *Lowery*, they will no longer be protected from costs and attorneys fees, and possibly from Rule 11 sanctions, in diversity removal cases like this one when they ask the federal court to speculate.

An appropriate separate order will be entered.

DONE this 30th day of April, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE